LOKEN, Circuit Judge,
with whom BOWMAN and BEAM, Circuit Judges, join, dissenting.
I respectfully dissent. In Missouri v. Jenkins, 515 U.S. 70, 115 S.Ct. 2038, 132 L.Ed.2d 63 (1995) (Jenkins III), the Supreme Court held that'much of the remedy imposed by the district court and upheld by a panel of this court went beyond the permissible bounds of an equitable school desegregation decree. The Court defined the scope of an appropriate remedy:
the proper response by the District Court should have been to eliminate to the extent practicable the vestiges of prior de jure segregation within the KCMSD: a systemwide reduction in student achievement and the existence of 25 racially identifiable schools with a population of over 90% black students.
515 U.S. at 90, 115 S.Ct. 2038. Among the remedial measures the Court reversed was a mandate to fund “quality education programs.” In rejecting this court’s attempt to fill in the gaps in the district court’s analysis of that issue, the Supreme Court cautioned:
Although the District Court has determined that “[sjegregation has caused a system wide reduction in achievements in the schools of the KCMSD,” 639 F.Supp. at 24, it never has identified the incremental effect that segregation has had on minority student achievement or the specific goals of the quality education programs.
515 U.S. at 101, 115 S.Ct. 2038 (emphasis in original). The Court remanded, instructing the district court “that its end purpose is not only ‘to remedy the violation’ to the extent practicable, but also ‘to restore state and local authorities to the control of a school system that is operating in compliance with the Constitution.’ ” Id. at 102, 115 S.Ct. 2038, quoting Freeman v. Pitts, 503 U.S. 467, 489, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992).
On remand, the district court took up the question of an alleged achievement gap between black and white students in the KCMSD. Its prior findings as to vestiges — as determined by the Supreme Court — were limited to finding a system-wide reduction in student achievement. Yet the district court on remand did not make the critical finding that any achievement gap among students within the KCMSD was also a vestige of discrimination with “a causal link to the de jure violation being remedied.” Jenkins III, 515 U.S. at 96, 115 S.Ct. 2038. Instead, the district court held that “the plaintiffs are entitled to the presumption that current disparities are causally related to pri- or segregation, and the burden of proving otherwise rests on the defendants.” Jenkins v. Missouri, 959 F.Supp. 1151, 1157 (W.D.Mo.1997). Having ducked the critical causation question, the district court proceeded to quantify a present “race effect” of 2.6 normalized curve equivalents (NCEs) and order that it be remedied. A panel of this court again affirmed. Jenkins v. Missouri, 122 F.3d 588 (8th Cir.1997).[24]
*744 In my view, the district court and this court violated the Supreme Court’s law of the case by deciding in 1997 to presume that a present-day achievement gap is a vestige of the de jure segregated school system maintained under Missouri law pri- or to 1954. The result of shifting the burden of proof was to place on KCMSD the impossible burden of proving that no part of the present-day gap — which ironically is significantly less' in Kansas City than the national norm, see 959 F.Supp. at 1158 — is causally linked to de jure segregation in the distant past. See Coalition to Save Our Children v. Board of Educ., 90 F.3d 752, 776-77 (3d Cir.1996); see also Freeman v. Pitts, 503 U.S. 467, 503-06, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992) (Scalia, J., concurring).[25] The Supreme Court has only placed this burden of proof on defendants when resolving claims that lingering segregation or racial imbalance were vestiges of de jure segregation.[26] Even in those cases, the Court has stated that the causal presumption diminishes “[a]s the de jure violation becomes more remote in time.” Freeman, 503 U.S. at 496, 112 S.Ct. 1430; see id. at 503-06, 112 S.Ct. 1430 (Scalia, J., concurring); Jenkins III, 515 U.S. at 118, 115 S.Ct. 2038 (Thomas, J., concurring).
By shifting the burden of proof on an ancillary issue such as student achievement, the district court created a regime of federal court supervision that will seemingly never end. The case was then assigned to a new district judge, who recognized that the achievement gap mandate, improperly imposed by his predecessor arid this court some three years ago, frustrates the Supreme Court’s directive to promptly restore this school district to local control.[27] Accordingly, when KCMSD virtually admitted that it could not meet the 2.6-NCE mandate for the foreseeable future, the district court declared unitary status. Sadly, this court now decides to perpetuate its disregard for the Supreme Court’s instructions in Jenkins III by requiring more open-ended litigation over whether KCMSD has complied with an order to remedy a present-day condition that has never been proved to be a vestige of prior de jure segregation. I would affirm.

. The order to close the achievement gap by 2.6 NCEs effectively ignored the distaste expressed by all nine Justices for decrees that require a certain level of statistical perfor *744 mance on standardized tests before unitary status can be found. See Jenkins III, 515 U.S. at 101-02, 115 S.Ct. 2038; id. at 148-49, 115 S.Ct. 2038 (Souter, J., dissenting).

.The district court based its finding of a 2.6-NCE quantitative gap on expert opinion evidence that was likely inadmissible under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). See People Who Care v. Rockford Bd. of Educ., 111 F.3d 528, 534, 537-38 (7th Cir.1997). In any event, that evidence wholly failed to establish that any race-related portion of the achievement gap was caused by the prior de jure segregation. See United States v. City of Yonkers, 197 F.3d 41, 54-55 (2d Cir.1999), cert. denied, - U.S. -, 120 S.Ct. 2005, 146 L.Ed.2d 956 (2000). "The vestiges of segregation that are the concern of the law in a school case may be subtle and intangible but nonetheless they must be so real that they have a causal link to the de jure violation being remedied.” Jenkins III, 515 U.S. at 96, 115 S.Ct. 2038.

. See United States v. Fordice, 505 U.S. 717, 738-39, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992); Freeman, 503 U.S. at 494, 112 S.Ct. 1430; Dayton Bd. of Educ. v. Brinkman, 443 U.S. 526, 537, 99 S.Ct. 2971, 61 L.Ed.2d 720 (1979); Keyes v. School Dist. No. 1, 413 U.S. 189, 209-10, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973); Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 26, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

. "Insistence upon academic goals unrelated to the effects of legal segregation unwarrantably postpones the day when the KCMSD will be able to operate on its own.” Jenkins III, 515 U.S. at 102, 115 S.Ct. 2038.